UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VON CEDRIC LARRY,

     Petitioner,                  Case No. 10-13047

v.

                                      HON. AVERN COHN

STEVEN RIVARD,

     Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DENYING A CERTIFICATE OF APPEALABILITY

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Von Cedric Larry, (Petitioner), is a state inmate at the Oaks Correctional Facility (ECF) in Manistee, Michigan and serving a sentence of 99-145 years imprisonment for solicitation to commit murder, M.C.L. §750.157b, and being a fourth habitual offender, M.C.L. § 769.12.  Petitioner has filed a pro se petition for writ of habeas corpus contending that he is incarcerated in violation of his constitutional rights.  Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims are meritless or procedurally defaulted.  For the reasons that follow, the petition will be denied.

### II.  Procedural History

Petitioner was convicted following a jury trial.  He filed an appeal of right to the Michigan Court of Appeals, raising several claims.  The court of appeals affirmed Petitioner's conviction but remanded for resentencing, finding that the trial court failed to adequately explain why it believed a 36.5 year departure from the guidelines was

appropriate.  People v. Larry, No. 283364, 2009 WL 5194987 (Mich.Ct.App. December 15, 2009).  Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims.  The Michigan Supreme Court denied petitioner leave to appeal.  People v. Larry, 486 Mich. 929 (2010).

On remand, the trial court resentenced Petitioner to the same term of years, as described above.

In August of 2010, Petitioner filed the instant petition.  (Doc. 1).  Shortly after filing, Petitioner moved to stay the case while he pursued an additional claim that arose following his resentencing.  (Doc. 8).  The Court granted the motion and administratively closed the case.  (Doc. 9).

Petitioner presented his new claim in the court of appeals.  The court of appeals affirmed Petitioner's sentence.  People v. Larry, No. 300370, 2011 WL 6464034 (Mich.Ct. App. December 22, 2011).  The Michigan Supreme Court denied Petitioner's application for leave to appeal.  People v. Larry, 491 Mich. 921 (2012).

Following the Michigan Supreme Court's decision, Petitioner filed a motion to reopen his case and amend the petition.  (Doc. 14).  The Court granted the motion. (Doc. 17).  The matter is now ready for decision.

Petitioner raises the following claims, phrased by Petitioner as follows:

I.  Defendant was denied due process of law because the evidence of solicitation to murder is insufficient to sustain his conviction and the verdict is against the great weight of the evidence. US Const Am XIV.

II. Defendant was denied due process of law by the trial court's failure to instruct on all essential elements of the crime of solicitation to murder; the trial court also failed to instruct on solicitation to commit second-degree murder; Defendant was denied effective assistance of counsel by his trial attorney's failure to object. US Const Am VI, XIV.

2

III. Defendant was denied a fair trial and his right of confrontation by the erroneous introduction, as 404(b) or res gestae evidence, of the details of a criminal sexual conduct case pending against him, and by exposing the jury to incriminating statements pertaining to a separate charge. US Const Am XIV.

IV. Defendant was denied a fair trial and effective assistance of counsel by the erroneous flight instruction and the lack of an instruction on credibility of the witnesses promised leniency for their testimony against Defendant; Defendant was denied effective assistance of counsel by his trial attorney's failure to object. US Const Am VI, XIV.

V.  The trial court's imposition of a 99-year minimum sentence, a 36.5 year departure above the defendant's sentence guidelines was not proportionate to the offense and was cruel and unusual punishment in violation of the 8th Amendment of the US Constitution.

### III.  Facts

The material facts leading to Petitioner's conviction are recited verbatim from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review under 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 410,

413 (6th Cir. 2009):

> . . . . [D]efendant purposely sought to have the victim, who was also the victim in an unrelated criminal sexual conduct prosecution against defendant, killed, and tried to engage defendant's cell-mate, Frederick Henderson, to commit the killing.  One of defendant's other cell-mates, Robert Noell, testified that during a conversation relating to the practice of morticians breaking bones of corpses in order to counteract the effects of rigor mortis, defendant interjected that defendant would "like" for "the witnesses" in his pending criminal sexual conduct case "to end up like that." According to Henderson, defendant had maintained his innocence of the CSC charges. However, soon after his comments relating to rigor mortis, defendant stated that the police matched his DNA with the DNA evidence recovered from the victim, and acknowledged that, because the police had matched defendant's DNA with that recovered from the victim, he "was gonna get found guilty."

> Henderson testified that defendant promised to procure $1,000 from his employer, representing a deposit or down payment to Henderson, "so the

girl would never show up in court." Henderson further testified that defendant attempted to contact defendant's employer by telephone in order to procure the money. Defendant also indicated to Henderson that he would pay Henderson between $20,000 and $30,000 after defendant was released from custody. However, Henderson did not actually receive any money from defendant.

As a result of an altercation between defendant and another of defendant's cellmates, defendant was relocated to a different cell in the Oakland County Jail. After defendant collected his personal effects, defendant sat on Henderson's bunk and wrote a note, which defendant then gave to Henderson. As defendant handed Henderson the note containing the victim's name, her birth date, the names of the victim's parents, and defendant's name and inmate number, defendant admonished Henderson to "make sure she never shows up in court." At trial, expert document examiner Ruth Holmes opined that there was "the highest degree of probability" that the handwriting on the note defendant handed to Henderson matched the handwriting on other documents written by defendant. Further, during previous conversations, defendant provided Henderson with a physical description of the victim, told Henderson where the victim went to school, and suggested that the best way to find the victim was "going or coming from school." Henderson testified that the police report did not provide a physical description of the victim.

. . . .

Moreover, after Noell reported defendant's attempt to procure money in order to prevent the victim from appearing in court to testify against him, Oakland County Sheriff's Deputy David Hendrick and Madison Heights Police Officer Corey Haines sent defendant a note through the jailhouse mail system which stated, "Your boy didn't get out. If you still need help with your problem maybe I can help. Call me, Dave." The note included a telephone number for defendant to call, which was actually the number of an extension in Hendrick's office. Defendant called the number listed on the card, and asked Hendrick, posing as "Dave Ray," if Henderson had supplied sufficient details regarding the problem for which defendant wanted a solution, and told "Dave" that defendant needed the problem to be solved "as soon as possible." Defendant also asked "Dave" to contact two people in order to obtain money. This evidence further demonstrates that defendant purposely sought to have the victim killed, and took steps to engage "Dave," as Henderson's substitute or subcontractor, to commit the killing.

People v. Larry, No. 283364, 2009 WL 5194987, * 1-2 (Mich. Ct. App. Dec. 15, 2009).

4

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855,

5

1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the

6

law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

## V.  Petitioner's Claims

### A.  Sufficiency of the Evidence/Great Weight of the Evidence

### 1.

Petitioner first contends that there was insufficient evidence to convict him of solicitation to commit murder.  In the alternative, Petitioner contends that the verdict went against the great weight of the evidence.  Respondent says the claim lacks merit.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In Re Winship, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Id. at 318-19 (internal citation and footnote

7

omitted)(emphasis in the original).  Circumstantial evidence alone is sufficient to support

a conviction, and it is not necessary for the evidence at trial to exclude every reasonable

hypothesis except that of guilt.  Johnson v. Coyle, 200 F. 3d 987, 992 (6th Cir.

2000)(internal quotations omitted).

 More importantly, a federal habeas court may not overturn a state court decision

that rejects a sufficiency of the evidence claim simply because the federal court

disagrees with the state court's resolution of that claim.  Instead, a federal court may

grant habeas relief only if the state court decision was an objectively unreasonable

application of the Jackson standard.  See Cavazos v. Smith, 132 S. Ct. 2, 4 (2011).

"Because rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be

mistaken, but that they must nonetheless uphold."  Id.  In fact, the Jackson standard "is

so demanding that '[a] defendant who challenges the sufficiency of the evidence to

sustain his conviction faces a nearly insurmountable hurdle.'"  Davis v. Lafler, 658 F. 3d

525, 534 (6th Cir. 2011)(quoting United States v. Oros, 578 F.3d 703, 710 (7th  Cir.

2009)(internal quotation marks omitted)).  Therefore, for a federal habeas court

reviewing the sufficiency of evidence for a state court conviction, "the only question

under Jackson is whether that finding was so insupportable as to fall below the

threshold of bare rationality."  Coleman v. Johnson, 132 S.Ct. 2060, 2065 (2012).

 Finally, on habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial.

Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to

weigh the probative value of the evidence and resolve any conflicts in testimony.  Neal

v. Morris, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

Under Michigan law, the elements of solicitation to commit murder are: "(1) the solicitor purposely seeks to have someone killed and (2) tries to engage someone to do the killing." People v. Crawford, 232 Mich.App. 608, 616 (1998). "Solicitation is complete when the solicitation is made." Id. "Actual incitement is not necessary for conviction." Id. "Solicitation to commit murder is a specific intent crime that requires proof that the defendant intended that a murder would in fact be committed." Id. Under Michigan law, "solicit" is statutorily defined as an "offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation." M.C.L. § 750.157b(1).

**2.**

Petitioner contends that there was insufficient evidence presented at trial to prove every element of the charge of solicitation to commit murder. The Michigan Court of Appeals rejected this claim as follows:

> [T]he evidence regarding defendant's awareness that he was likely to be convicted of the criminal sexual conduct charge, pursuant to which he could be subject to a sentence of life imprisonment, defendant's statement that he wanted the victim to "never" appear in court, defendant's attempts to procure money offered to Henderson in order for Henderson to ensure that the victim "never" appeared in court, and that defendant supplied Henderson with a physical description of the victim and advice on how she could be located, is sufficient evidence from which a rational trier of fact could conclude that defendant solicited Henderson to commit the murder of the victim.

Larry, No. 283364, 2009 WL 5194987, at * 2 (internal citations omitted).

The Court agrees with the court of appeals reasoning and conclusion. There

9

was sufficient evidence for a rational trier of fact to conclude that Petitioner attempted to have the victim killed, tried to engage a fellow inmate to do the killing and attempted to procure money in order to prevent the victim from appearing in court to testify against him, so as to sustain his conviction for solicitation to commit murder.  In addition to the court of appeals' explanation of the evidence, the record shows that after Petitioner's attempt to procure money in order to prevent the victim from appearing in court to testify against him, Oakland County Sheriff's Deputy David Hendrick and Madison Heights Police Officer Corey Haines sent Petitioner a note through the jailhouse mail system which stated, "Your boy didn't get out.  If you still need help with your problem maybe I can help. Call me, Dave."  Petitioner called the number listed, asked "Dave" if Henderson had supplied sufficient details regarding the problem for which petitioner wanted a solution, told "Dave" that petitioner needed the problem to be solved "as soon as possible," and instructed "Dave" to contact two people in order to obtain the money. From the record, there was sufficient evidence to support a finding of solicitation to commit murder.

With respect to Petitioner's great weight of the evidence claim, the Court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence.  Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).  A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised.  Cukaj, 305 F. Supp. 2d at 796.  As long as there is sufficient evidence to convict Petitioner of the offense, the fact that the verdict may have gone

against the great weight of the evidence would not entitle him to habeas relief.  Id.

Overall, Petitioner is not entitled to habeas relief on his first claim.

### B.  Jury instructions/Ineffective Assistance of Counsel

### 1.

In claims two and four, Petitioner alleges various instructional errors and that trial counsel was ineffective for failing to object to the errors.  As such, the Court will consider these related claims together.

Respondent contends that parts of Petitioner's second and fourth claims are procedurally defaulted because he failed to preserve these errors by objecting at trial and the Michigan Court of Appeals rejected these claims on this basis.  Petitioner, however, says that these claims were not properly preserved because his trial counsel was ineffective for failing to object to these errors.  Ineffective assistance of counsel may establish cause for procedural default.  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims.  See Cameron v. Birkett, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). The Court will also discuss each aspect of Petitioner's ineffective assistance of counsel

11

claims together with the underlying claim.

**2.**

Petitioner first contends that the trial court failed to instruct the jury on all essential elements of the crime of solicitation to commit murder. Petitioner says that by failing to give the proper jury instructions, the jury was allowed to convict him on less evidence than required and without proof of all elements of the offense, including proof that he intended to murder the victim.

A federal court in a habeas corpus proceeding must do more than find a jury instruction in a state criminal trial was erroneous to grant habeas relief. See Smith v. Anderson, 505 F. Supp. 642, 644 (E.D. Mich. 1980). The question on habeas review of jury instructions is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141,147 (1973). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991)(quoting Naughten, 414 U.S. at 147).

The Michigan Court of Appeals, in rejecting Petitioner's ineffective assistance of counsel claim, held that the trial court correctly instructed the jurors on the two elements of solicitation to commit murder and that it was unnecessary for the trial court to instruct the jurors on incitement, because that was not an element of the offense. Larry, No. 283364, 2009 WL 5194987, at * 5.

Federal courts are bound by the state courts' interpretation of their own laws. See Mullaney v. Wilbur, 421 U.S. 684, 690-91 1975). The nature of a particular jury

12

instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law.  Newton v. Million, 349 F.3d 873, 879 (6th Cir. 2003).  Because the Michigan Court of Appeals found that the instruction given by the trial court accurately reflected Michigan law regarding the elements required for solicitation to commit murder, this Court must defer to that determination.  Moreover, because the instructions as given on the elements of solicitation to commit murder were adequate, counsel's failure to object was not objectively unreasonable, and Petitioner cannot show that a different instruction would likely have changed the outcome of his trial as to entitle him to habeas relief on this basis.

To the extent that Petitioner claims that the trial court failed to adequately instruct the jury with respect to the specific intent to commit murder, this portion of his claim is foreclosed by the Michigan Court of Appeals' conclusion that "[t]he trial court adequately instructed the jury regarding the necessary intent for solicitation to commit murder, and therefore, the trial court was not required to give a special instruction reiterating the intent requirement."  Larry, 2009 WL 5194987, at * 5.

The Michigan Court of Appeals also noted that where a party expressly approves the instructions before they are given by the trial court, the party waives any challenges to jury instructions on appeal.  Id. at * 4.  Counsel approved the instructions before they were given.

Because the instructions in their entirety adequately explained the issue of specific intent, Petitioner is not entitled to habeas relief on his claim of instructional error.

13

**3.**

Petitioner next contends that the trial court erred in failing to instruct the jury on the lesser included offense of solicitation to commit second-degree murder or that trial counsel was ineffective for failing to request such an instruction.

The Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case.  See Adams v. Smith, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(citing to Beck v. Alabama, 447 U.S. 625, 638, n. 4 (1980)).  Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief.  Id.; see also David v. Lavinge, 190 F. Supp. 2d 974, 986, n. 4 (E.D. Mich. 2002).  The Sixth Circuit has interpreted Beck to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases."  Campbell v. Coyle, 260 F. 3d at 541.  Thus, this claim is not available on habeas review.

Furthermore, Petitioner is not entitled to relief because Michigan law does not have a crime called solicitation to commit second-degree murder.  See People v. Knasiak, No. 1999 WL 33439154, * 5 (Mich.Ct.App. July 2, 1999)("we conclude that there is no such offense as solicitation to commit second-degree murder.").  Thus, it cannot be considered a necessarily lesser included offense of solicitation to commit murder.  Counsel was therefore not ineffective in failing to request an instruction on solicitation to commit second-degree murder.

**4.**

14

Petitioner next alleges that the court erred in failing to give the jurors an instruction pertaining to the credibility of the incarcerated prosecution witnesses. Petitioner says that if the jury had known that witnesses Noell and Henderson were promised leniency in exchange for their testimony, the outcome of his case would have been different.  Petitioner further claims that trial counsel was ineffective for failing to request such an instruction.

Although the trial court did not give the jurors a special instruction regarding the credibility of incarcerated witnesses, the trial court did give the jurors a general instruction on judging witness credibility and the factors that the jurors should use in making that determination.  (Tr. 12/20/07, pp. 52-55).

Petitioner is not entitled to habeas relief.  First, the instructions as given adequately instructed the jury on the various considerations that it should take into account in weighing the credibility of the witnesses and gave them an ample basis for rejecting the testimony of the prosecution witnesses if it chose to do so.

Second, in rejecting Petitioner's related ineffective assistance of counsel claim, the Michigan Court of Appeals indicated that several defense witnesses were also incarcerated.  The court of appeals opined that counsel may have decided such an instruction would not help given that it would have been equally applicable to all of the defense witnesses.  Larry, 2009 WL 5194987, at * 5.

The Court agrees with the court of appeals.  Trial counsel's failure to request a cautionary instruction relating to the credibility of the incarcerated witnesses was not deficient performance.  Counsel's failure to request the instruction can be attributed to sound trial strategy and there is no reasonable probability that but for counsel's

15

challenged actions and inactions, the result of the trial would have been different. "Counsel will not be deemed constitutionally ineffective if they choose not to request a particular instruction, provided that such a decision constitutes sound trial strategy." Johnson v. Konteh, 597 F. Supp. 2d 747, 751 (N.D. Ohio 2009)(citing Goldsby v. United States, 152 Fed. Appx. 431, 437 (6th Cir. 2005)).

In sum, Petitioner is not entitled to habeas relief based on his claims of improper jury instructions and ineffective assistance of counsel.

### C. Admission of Bad Act Evidence

#### 1.

In his third claim, Petitioner says that the trial court erred in admitting bad acts evidence regarding Petitioner's prior sexual assault upon the victim without procuring the victim for trial. He also says this prevented him from cross-examination of the victim, violated his right to confrontation, and that the statements were more prejudicial than probative. Respondent says this claim lacks merit.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." Estelle v. McGuire, 502 U.S. at 67-68. A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. Id. Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. Seymour v. Walker, 224 F. 3d at 552.

#### 2.

Based on the above, Petitioner's claim that the state court violated M.R.E. 404(b)

16

by admitting this evidence is not available on habeas review.  The admission of this

"prior bad acts" or "other acts" evidence against Petitioner at his state trial does not

entitle him to habeas relief, because there is no clearly established Supreme Court law

which holds that a state violates a habeas petitioner's due process rights by admitting

propensity evidence in the form of "prior bad acts" evidence.  See Bugh v. Mitchell, 329

F. 3d 496, 512 (6th Cir. 2003).

Moreover, it is not clear that the evidence that Petitioner complains about would

be excluded under 404(b).  Background evidence, often referred to as *res gestae*

evidence, does not implicate the provisions of 404(b).  United States v. Hardy, 228 F. 3d

745, 748 (6th Cir. 2000).  Background evidence consists of other acts which are

"inextricably intertwined" with the charged offenses or those acts, "the telling of which is

necessary to complete the story of the charged offense." Id.

As the Michigan Court of Appeals indicated in rejecting petitioner's claim:

> [T]he evidence pertaining to the collection and testimony of the DNA
> sample given by defendant during the criminal sexual conduct
> investigation at issue was highly relevant to defendant's motive to solicit
> Henderson to murder the victim, and the trial court did not abuse its
> discretion by allowing this evidence to be admitted. The evidence
> pertaining to the commission of the criminal sexual conduct crime, such as
> Haines's description of the sexual assault itself, which occurred in the
> back of defendant's van and involved penile-vaginal penetration, was also
> relevant and admissible. Despite defendant's objection that this evidence
> was irrelevant under MRE 403 and could confuse the jury, the trial court
> did not err in allowing the testimony to be admitted for the purpose of
> establishing defendant's motive and the reasons Haines took further steps
> in his investigation, including Haines's decision to obtain a DNA sample
> from the victim. Further, the evidence relating to the assault was relevant
> to defendant's motive, because it explained the source of the DNA
> evidence, linking defendant to the sexual assault, which in turn,
> demonstrated why defendant sought to have the victim killed. MRE
> 404(b)(1). The trial court, in cautioning the jury that the evidence was
> relevant only for its probative value of demonstrating defendant's motive

17

and explaining why Haines conducted further investigation, shielded the defendant from the jury's use of the evidence for an improper purpose, and protected against the danger of unfair prejudice to defendant. Generally, jurors are presumed to follow instructions. Thus, the trial court did not abuse its discretion when it admitted evidence relating to the sexual assault itself.

Further, the trial court did not err when it concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. The trial court stated that any danger of unfair prejudice would be eliminated with a proper jury instruction, which the trial court gave in this case. Generally, jurors are presumed to have followed their instructions.

Further, the trial court did not abuse its discretion when it concluded that the evidence relating to the criminal sexual conduct case was *res gestae* evidence. The circumstances relating to the criminal sexual conduct charge was inextricably linked to defendant's motive to solicit the victim's murder.

Larry, No. 283364, 2009 WL 5194987, at * 7-8 (additional citations omitted).

Because Petitioner's underlying criminal sexual crimes were "inextricably intertwined" with the subsequent solicitation to murder charge, the admission of this evidence did not deprive petitioner of a fair trial.

Likewise, Petitioner's claim that this evidence was irrelevant does not raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. See Oliphant v. Koehler, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Finally, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. See Dell v. Straub, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).

### 3.

Petitioner also contends that the admission of statements and evidence

18

pertaining to the victim and the sexual assault violated his Sixth Amendment right to confrontation.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court.  See Crawford v. Washington, 541 U.S. 36 (2004).  Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. Crawford, 541 U.S. at 51-52, 56.

The Michigan Court of Appeals concluded that the evidence relating to petitioner's criminal sexual conduct charge was admissible under MRE 404 (b) as *res gestae* evidence for purposes including "proof of motive."  Larry, 2009 WL 5194987, at * 6-8.

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59, n. 9; see also Tennessee v. Street, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement).  Evidence that is admitted to establish criminal intent or knowledge is not hearsay. See United States v. Mays, 69 F.3d 116, 121 (6th Cir. 1995).

Thus, the admission of evidence pertaining to the underlying criminal sexual conduct charge did not violate Petitioner's right to confrontation.  Furthermore, the

Michigan Court of Appeals noted that the evidence was non-testimonial, admitted to show motive in support of the solicitation to murder, and that this issue was waived when petitioner "specifically and affirmatively approved the trial court's offer to give the curative instruction."  Larry, 2009 WL 5194987, at * 6-8.  Petitioner is therefore not entitled to habeas relief on his third claim.

### D.  Sentence

#### 1.

In Petitioner's fifth claim, he says that the imposition of his 99-145 year sentence was not proportionate to the offense and the offender and constitutes cruel and unusual punishment in violation of the Eighth Amendment.

#### 2.

As an initial matter, to the extent that Petitioner argues that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief.  See Austin v. Jackson, 213 F. 3d 298, 300 (6th Cir. 2000).  There is also no federal constitutional right to individualized sentencing.  See United States v. Thomas, 49 F. 3d 253, 261 (6th Cir. 1995).

Petitioner also is not entitled to relief on any claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment.  The United States Constitution does not require strict proportionality between a crime and its punishment.  See Harmelin v. Michigan, 501 U.S. 957, 965 (1991).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  Austin, 213 F.3d at 302 (internal quotation omitted).  "Federal

courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." Thomas, 49 F. 3d at 261.

Petitioner's sentence of 99 to 145 years imprisonment on his conviction for solicitation to commit murder and being a fourth felony habitual offender was within the statutory maximum of life imprisonment for these offenses. See M.C.L. §§ 750.157b; 769.12. Thus, the state court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between petitioner's crime and sentence so as to offend the Eighth Amendment. See, e.g. Chandler v. Jones, 813 F. 2d 773, 779 (6th Cir. 1987)(life sentence imposed pursuant to Habitual Criminals Act upon conviction for third-degree burglary not cruel and unusual punishment). Habeas relief is not warranted on this claim.

## VI.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**  This case is **DISMISSED**.

Furthermore, reasonable jurists would not debate the Court's assessment of petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore **DENIES** a certificate of appealability under 28 U.S.C. § 2253(c)(2).[1]  See Slack v. McDaniel, 529 U.S. 473, 484 (2000)

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28

21

**SO ORDERED.**


          S/Avern Cohn
         AVERN COHN
         UNITED STATES DISTRICT JUDGE


Dated:  January 16, 2015
       Detroit, MI


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 16, 2015, by electronic and/or ordinary mail.


         S/Sakne Chami
         Case Manager, (313) 234-5160

---

U.S.C. foll. § 2254.